COPY MAILED ☐
COUNSEL FOR PLTFF(S):
COUNSEL FOR DFT(S):
PLTF PRO SE:
DFT PRO SE:
DATE: 3/12/09
BY: ⟋

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
CARLOS MENESES,                     :
                                    :
                  Plaintiff,        :
            v.                      :        05 Civ. 10625 (BSJ)(RLE)
                                    :        Memorandum & Order
THE LONG ISLAND RAILROAD COMPANY,   :
                                    :
                  Defendant.        :
------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/13/09

**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

Plaintiff Carlos Meneses ("Plaintiff") commenced this action

on or about December 19, 2005, alleging a cause of action arising

under the Federal Employer's Liability Act, 45 U.S.C. § 51,

against the Long Island Railroad Company ("LIRR" or "Defendant").

Before the Court is Defendant's Motion for Summary Judgment.  For

the reasons set forth below, Defendants' Motion is GRANTED.

## BACKGROUND

This case arises out of injuries sustained by Plaintiff on

December 2, 2004 while performing work for his employer, the Long

Island Railroad Company.  On that date, Defendant's work gang was

assigned to remove tie rods near the Smithtown train station.

(Def.'s Rule 56.1 Stmt. ¶ 9; Pl.'s Rule 56.1 Stmt. ¶ 9.)

Plaintiff was instructed to join the rest of his gang and begin

removing the rods only after the conclusion of his Machine

Operator Examination.  (Def.'s Rule 56.1 Stmt. ¶ 9; Pl.'s Rule

56.1 Stmt. ¶ 9.)  Plaintiff completed his Machine Operator

Examination and went to assist the rest of his gang.  (Def.'s

Rule 56.1 Stmt. ¶ 10; Pl.'s Rule 56.1 Stmt. ¶ 10.)   Because the gang had an odd number of members and the other members were already paired up, Plaintiff began removing tie rods on his own. (Def.'s Rule 56.1 Stmt. ¶ 11; Pl.'s Rule 56.1 Stmt. ¶ 11.)   At one point during his work, Plaintiff asked for help in pulling a tie rod; the other members of Plaintiff's gang told Plaintiff to wait for their assistance.   (Def.'s Rule 56.1 Stmt. ¶ 12; Pl.'s Rule 56.1 Stmt. ¶ 12.)   Plaintiff, however, felt that he could pull the tie rod himself, and so he attempted to do so.   (Def.'s Rule 56.1 Stmt. ¶ 12; Pl.'s Rule 56.1 Stmt. ¶ 12.)   As Plaintiff was pulling, he felt a pain in his back.   (Def.'s Rule 56.1 Stmt. ¶ 13; Pl.'s Rule 56.1 Stmt. ¶ 13.)   After taking a five minute break, Plaintiff again attempted to pull the tie rod, but quickly stopped due to pain.   (Def.'s Rule 56.1 Stmt. ¶¶ 13-14; Pl.'s Rule 56.1 Stmt. ¶¶ 13-14.)   Plaintiff then informed his foreman of his back pain, and the foreman instructed Plaintiff to stop the work he was doing.   (Def.'s Rule 56.1 Stmt. ¶ 14; Pl.'s Rule 56.1 Stmt. ¶ 14.)   Plaintiff believed he would be able to engage in the less strenuous activity of shoveling ballast (as opposed to removing ties), but shortly found he could not do so.   (Def.'s Rule 56.1 Stmt. ¶¶ 14-15; Pl.'s Rule 56.1 Stmt. ¶¶ 14-15.) Plaintiff told his foreman he did not need medical attention; Plaintiff was directed to wait by the truck while the rest of the gang continued to work.   (Def.'s Rule 56.1 Stmt. ¶ 15; Pl.'s Rule

56.1 Stmt. ¶ 15.)

During Plaintiff's deposition in this case, Plaintiff revealed for the first time that he had filed for bankruptcy subsequent to the alleged accident. (Def.'s Rule 56.1 Stmt. ¶ 16; Pl.'s Rule 56.1 Stmt. ¶ 16.) Specifically, on September 26, 2005 Plaintiff filed a voluntary petition under Chapter 7 (liquidation) of the U.S. Bankruptcy Code in the Eastern District of New York. (Def.'s Rule 56.1 Stmt. ¶ 2; Pl.'s Rule 56.1 Stmt. ¶ 2.) Plaintiff failed to include on Schedule B of his Bankruptcy Petition any legal interest in the injuries he suffered to his back that are the subject of the instant action. (Def.'s Rule 56.1 Stmt. ¶ 3; Pl.'s Rule 56.1 Stmt. ¶ 3.) On November 10, 2005 the Bankruptcy Trustee issued his report of no distribution. (Def.'s Rule 56.1 Stmt. ¶ 4; Pl.'s Rule 56.1 Stmt. ¶ 4.) In that report he certified that Plaintiff's estate ("the debtor's estate") had been fully administered, that he neither received nor distributed any non-exempt property, that he diligently inquired about the debtor's financial affairs and location of estate property, and that the estate had no non-exempt property to distribute. (Def.'s Rule 56.1 Stmt. ¶ 4; Pl.'s Rule 56.1 Stmt. ¶ 4.) On January 19, 2006, the Bankruptcy Court granted Plaintiff a discharge under § 727 of Title 11 of the Bankruptcy Code and closed the case. (Def.'s Rule 56.1 Stmt. ¶ 5; Pl.'s Rule 56.1 Stmt. ¶ 5.)

**LEGAL STANDARD**

Rule 56 of the Federal Rules of Civil Procedure provides that a court shall grant a motion for summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish her right to judgment as a matter of law." Rodriguez v. City of New York, 72 F.3d 1051, 1060-61 (2d Cir. 1995).  The substantive law governing the case will identify those facts that are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  "If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper."  Chambers v. TRM Copy

4

Centers Corp., 43 F.3d 29, 37 (2d Cir. 1994).

## DISCUSSION

Defendant first argues that it is entitled to Summary Judgment because Plaintiff lacks standing to pursue this action due to his failure to schedule his claim as an asset of his bankruptcy estate.  The Court agrees.

When a debtor files for bankruptcy, an estate is created that encompasses "all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a)(1).  Upon such filing, the debtor is required to submit a schedule of assets and liabilities to the Bankruptcy Court, which must include "[a]ll assets of the debtor, including all pre-petition causes of action belonging to the debtor."  Kunica v. St. Jean Financial, Inc., 233 B.R. 46, 52 (S.D.N.Y. 1999). Particularly relevant to the instant case, "[p]roperty of the bankruptcy estate includes causes of action belonging to the debtor which accrued prior to the filing of the bankruptcy petition."  Calabrese v. McHugh, 170 F. Supp. 2d 243, 256 (D. Conn. 2001); see also Rosenshein v. Kleban, 918 F. Supp. 98, 102 (S.D.N.Y. 1996) (stating that an "estate's assets include all causes of action that can be brought by the debtor").  "Because full disclosure by debtors is essential to the proper functioning of the bankruptcy system, the Bankruptcy Code severely penalizes debtors who fail to disclose assets:  While properly scheduled

estate property that has not been administered by the trustee
normally returns to the debtor when the bankruptcy court closes
the case, undisclosed assets automatically remain property of the
estate after the case is closed." Chartschlaa v. Nationwide Mut.
Ins. Co., 538 F.3d 116, 122 (2d Cir. 2008). This rule ensures
that "[a] debtor may not conceal assets and then, upon
termination of the bankruptcy case, utilize the assets for [his]
own benefit." Kunica, 233 B.R. at 53. Accordingly, courts have
held that because an unscheduled claim is the property of a
debtor's bankruptcy estate, a debtor who attempts to pursue such
a claim after emerging from bankruptcy lacks standing to do so.
Rosenshein, 918 F. Supp. at 103; see also Chartschlaa, 538 F.3d
at 121; Chapple v. Fahnestock & Co., Inc., No. 103-CV-04989, 2006
WL 2546563, at *2 (E.D.N.Y. Sept. 1, 2006); Kassner v. 2nd Ave.
Delicatessen Inc., No. 04 CV 7274, 2005 WL 1018187, at *3
(S.D.N.Y. Apr. 29, 2005).

In this case, Plaintiff asserts a claim arising under the
Federal Employer's Liability Act ("FELA"). "As a general
proposition, the accrual point for a personal injury claim under
FELA is the moment the injury occurs." Bababekov v. Long Island
R.R. Co., No. 03-CV-3477, 2006 WL 229914, at *4 (E.D.N.Y. Jan.
31, 2006); see also Mix v. Delaware & Hudson Ry. Co., Inc., 345
F.3d 82, 88 (2d Cir. 2003) (distinguishing between "traumatic"
injuries and "gradual" injuries for accrual purposes). This is

true because:

> When the nature of the injury is such that it manifests itself immediately, its symptoms are immediately detectable, and the plaintiff is aware of his condition and the alleged wrongful act which caused it almost from the instant the injury is inflicted, — though he may not always know the extent of his disability he is in no doubt that he was injured, — and where that knowledge exists on the occurrence of the injury there is an immediate accrual of the cause of action and the statutory period begins at that time.

Bababekov, 2006 WL 229914, at *5.  Here, the undisputed facts make it clear that Plaintiff's FELA cause of action accrued on December 2, 2004, almost ten months before he filed for bankruptcy on September 26, 2005.  During his deposition, Plaintiff stated that his injuries occurred on December 2, 2004 at approximately 2:30 p.m. while he was attempting to pull a tie rod.  (Meneses Dep. 44:17-48:15, 48:10-15, May 7, 2007.) Plaintiff additionally testified that he was examined by a doctor on that same day.  (Meneses Dep. 52:4-19.)  During his visit with that physician, Plaintiff explained that his back injury had occurred while he was working with the railroad pulling a tie rod.  (Meneses Dep. 53:18-54:2.).  Thus, based on Plaintiff's own statements it is clear that Plaintiff knew of the existence and the cause of his injuries on date of his accident, December 2, 2004.  Accordingly, the FELA cause of action Plaintiff now asserts accrued before he filed his bankruptcy petition on September 26, 2005.

Plaintiff argues, however, that his FELA claim had not

accrued at the time he filed his bankruptcy petition because at that time he was "unaware that an action could be brought against Defendant for the injuries he sustained" and was even "unaware of the loss he sustained due to his accident and resulting injury." (Pl.'s Mem. L. in Opp'n at 7.) Plaintiff claims he was unaware of his losses and this cause of action because following Plaintiff's accident the Defendant continued to pay Plaintiff his wages (even though Plaintiff was unable to work) and covered his medical expenses. (Pl.'s Mem. L. in Opp'n at 7-8.) Plaintiff, however, provides no support — and the Court has uncovered none independently — for the proposition that Defendant's payment of wages and medical expenses changes the date on which Plaintiff's FELA claim accrued.[1] Accordingly, Plaintiff's argument that the instant cause of action had not accrued at the time he filed for bankruptcy is without merit.

Given that Plaintiff's FELA claim had accrued at the time he filed for bankruptcy, Plaintiff was required to include the claim on the schedule of assets and liabilities he filed with the Bankruptcy Court. It is undisputed that Plaintiff did not schedule the instant claim as required. (Def.'s Rule 56.1 Stmt. ¶ 3; Pl.'s Rule 56.1 Stmt. ¶ 3.) As a result, Plaintiff's FELA claim is the property of the bankruptcy estate, and Plaintiff has

---

[1] Plaintiff implies that his cause of action would accrue only when he would be required to repay these monies in the form of a "sick pay lien" to Defendant. Plaintiff would only be required to make such a repayment, however, upon filing suit against and successfully obtaining recovery from Defendant. Thus, under Plaintiff's theory, his FELA cause of action would

8

no standing to assert it.  See Chartschlaa, 538 F.3d at 121;

Chapple, 2006 WL 2546563, at *2; Kassner, 2005 WL 1018187, at *3.

Accordingly, Defendant's Motion for Summary Judgment is GRANTED.[2]

The fact that Plaintiff lacks standing, however, does not

mean that this action must now terminate.  "Instead of dismissing

the debtor's case, it is generally preferable to permit the

bankruptcy trustee to be substituted, as the named plaintiff, in

place of the debtor."  Kassner, 2005 WL 1018187, at *4.

Accordingly, on or before April 13, 2009 Plaintiff is directed to

notify the bankruptcy trustee of this case, provide the trustee

with a copy of this Memorandum and Order, and submit to the Court

proof that this Memorandum and Order has been served on the

trustee.  Plaintiff's action is dismissed with leave to restore

within ninety (90) days of the date of entry of this Memorandum

and Order upon application of the bankruptcy trustee, if the

trustee advises this Court that it wishes to pursue the claim.

### CONCLUSION

For the reasons set forth above, Defendant's Motion for

Summary Judgment is GRANTED.  Plaintiff's Complaint is DISMISSED

with leave to restore within ninety (90) days of the date of

entry of this Memorandum and Order upon application by the

bankruptcy trustee.

---

accrue only upon the successful litigation of his FELA claim, an untenable
position.
[2] Because the Court finds that Defendant is entitled to Summary Judgment due
to Plaintiff's lack of standing, the Court need not address Defendant's
alternative arguments in support of its Motion.

**SO ORDERED:**

**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

Dated:     New York, New York
           March     , 2009